**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:10-cv-492-FDW**
**(3:07-cr-46-FDW-1)**

| | | |
|---|---|---|
| **SHAWN MAURICE LUCAS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **ORDER** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| | ) | |

**THIS MATTER** is before the Court on consideration of the Petitioner's motion to vacate, set aside or correct sentence, filed pursuant to 28 U.S.C. § 2255, and the Respondent's motion for summary judgment. For the reasons that follow, Petitioner's section 2255 motion will be denied and dismissed.

## I.    BACKGROUND

On July 25, 2007, Petitioner was charged in a superseding indictment by the grand jury with six counts relating to gun and drug possession and drug trafficking. Counts 1 through 3 concerned an incident which was alleged to have occurred on October 18, 2005, in Mecklenburg County, North Carolina. Count 1 alleged that Petitioner, aided and abetted by others, possessed with intent to distribute more than 5 grams of cocaine base, and a mixture and substance containing a detectable amount of cocaine, all in violation of 21 U.S.C. §§ 841(a)(1) and 841(b). Count 2 charged that Petitioner, aided and abetted by others, knowingly used and carried a firearm in furtherance of the drug trafficking crime charged in Count 1, all in violation of 18 U.S.C. §§ 924(c)(1) and 2. Count 3 alleged that Petitioner, aided and abetted by others, and after

having been convicted of three felonies did knowingly possess a firearm, all in violation of 18 U.S.C. §§ 924(g)(1), 924(e) and 2.

Counts 4 through 6 involved allegations about criminal activity occurring on or about June 21, 2006. Count 4 charged that Petitioner, aided and abetted by others, knowingly possessed with intent to distribute a quantity of cocaine, all in violation of 21 U.S.C. §§ 841(a) and 841(b) and 2. Count 5 alleged that Petitioner, aided and abetted by others, possessed two firearms during and in relation to the furtherance of the drug trafficking crime in Count 4, all in violation of 18 U.S.C. §§ 924(c)(1) and 2. Count 6 charged that Petitioner, aided and abetted by others, knowingly possessed a firearm after having been convicted of three felonies, all in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). (3:07-cr-46, Doc. No. 22: Indictment).

Petitioner filed a motion to suppress the guns and drugs that were seized and served as the basis for the six-count, superseding indictment. The first search and seizure occurred on October 18, 2005 following a traffic stop. (Counts 1-3)[1] According to Petitioner's motion, he was riding in the back seat of his Chrysler Concorde along with two other individuals. An officer with the Charlotte Mecklenburg Police Department (CMPD), Officer Strong, observed the vehicle and initiated a traffic stop, although Petitioner contended that the driver of Petitioner's vehicle had not violated any traffic laws. Officer Strong explained that he stopped the vehicle because the 30-day registration tag was "unreadable." Officer Arnold arrived during the stop to assist Officer Strong and apparently a "baggie" was observed in the backseat of the car near the Petitioner. When Officer Arnold addressed Petitioner, he allegedly admitted that he had just

---

[1] The motion to suppress was filed before the grand jury returned the superseding indictment and was then supplemented to address the new charges. The motion to suppress, as supplemented, sought to suppress all physical evidence recovered, e.g., firearms, drugs, or drug paraphernalia, during the October 2005 and June 2006 searches.

rolled and smoked a blunt which contained marijuana. Petitioner and the other occupants were ordered from the vehicle: a search of Petitioner's car yielded a .38 revolver inside the pouch behind the front passenger seat. Petitioner was placed under arrest and charged with carrying a concealed weapon and possession of a firearm by a felon. (Doc. No. 16).

The second search occurred on June 21, 2006. In his motion to suppress, Petitioner alleged that he was in the parking lot of an apartment complex where he used to reside with his wife; Petitioner's wife still resided in the apartment. Officers approached Petitioner in the parking lot and he informed them of the fact that he used to live there. Petitioner still had personal property in his wife's apartment and the officers escorted him to the apartment door. Petitioner stated that because of the number of and actions of the officers he did not feel free to leave their presence and he believed he was in custody at that point. The officers knocked on the door and Petitioner's wife informed them that Petitioner had moved out but that he had personal items remaining in the apartment. The motion then alleges that the officers entered with the Petitioner and began to search the apartment without his wife's consent. The search returned what appeared to be a small quantity of cocaine powder, drug paraphernalia, and two guns. Petitioner was placed under arrest for possession of a firearm by a felon.

On October 1, 2007, the motion to suppress came on for hearing before the undersigned. Officers who participated in the searches testified regarding their participation as did Petitioner's wife, and Petitioner himself. After receiving evidence, the Court heard argument from the attorneys and then made numerous findings of fact, which are incorporated herein by reference,[2] and concluded that the majority of the searches were supported by probable cause and did not

---

[2] See (Doc. No. 48: Suppression Tr. at 214-222).

run afoul of the Petitioner's Fourth Amendment rights.[3]

The Government and Petitioner then engaged in discussions following the suppression hearing and later entered into a plea agreement wherein Petitioner agreed to plead guilty to Count 3 of his superseding indictment (possession of a firearm by a felon). The Government agreed to dismiss the remaining five counts in the indictment. (Doc. No. 33: Plea Agreement). The Court then conducted a Rule 11 plea colloquy and accepted Petitioner's plea of guilty after finding that he understood the elements of the felon-in-possession charge, the maximum penalties, and that he was knowingly waiving valuable constitutional rights, such as the right to contest the charge and be tried before a jury. Petitioner reserved his right to challenge the Court's denial of his motion to suppress.

On April 15, 2008, Petitioner appeared with counsel for his sentencing hearing. Petitioner was sentenced to a term of 120-months' imprisonment and he noted an appeal to the United States Court of Appeals for the Fourth Circuit. On appeal, Petitioner's sole challenge was to this Court's denial of his motion to suppress the evidence discovered by CMPD officers following the stop of his vehicle on October 18, 2005. Petitioner argued that Officer Strong had no reasonable suspicion or probable cause to initiate his stop of the vehicle. In particular, Petitioner contended that Officer Strong's reason for the stop—the placement of his 30-day registration tag—was insufficient to justify the stop because North Carolina law did not demand that the tag be placed on the bumper of the vehicle, and moreover, North Carolina law did not prohibit the placement of the tag in the window of the vehicle. The Fourth Circuit disagreed and noted a

---

[3] The Court suppressed the seizure of a $20 bill which was taken from Petitioner by the officers prior to the search and outside of the apartment.

North Carolina appellate case that had been decided shortly before Petitioner's appeal was decided.

The Fourth Court found that <u>North Carolina v. Stone</u>, 179 N.C. App. 297, 634 S.E.2d 244 (N.C. Ct. App. 2006), squarely addressed the issue of the placement of the tag. The Fourth Circuit summarized the facts in <u>Stone</u>:

> In <u>Stone</u>, a police officer began following a vehicle after he suspected the driver was speeding. <u>Id.</u> at 246. When the vehicle stopped in a parking lot, the officer saw that "the vehicle's license plate was displayed on the rear window instead of the bumper," at which point the officer approached the vehicle. <u>Id.</u> The trial court determined that the officer's traffic stop "was based on a 'reasonable suspicion' (if not probable cause) that the driver had been speeding . . . and was not properly displaying the vehicle's license tag (in violation of N.C. Gen. Stat. § 20-63(d))." <u>Id.</u> at 247. Because the driver had been speeding and "the vehicle's license plate was displayed in the rear window, rather than on the bumper," the North Carolina Court of Appeals held that the officer had "reasonable suspicion, if not probable cause, to believe that two traffic violations had occurred." <u>Id.</u> at 248.

<u>United States v. Lucas</u>, 322 F. App'x 326, 328 (4th Cir. 2009) (unpublished).

In applying <u>Stone</u>, the Fourth Circuit found the following:

> <u>Stone</u> supports the conclusion that placement of the tag on the rear window, alone, constituted a violation of § 20-63(d) and provided probable cause for a traffic stop. To the extent that <u>Stone</u> leaves any room for doubt, however, we agree with the district court that, under the circumstances of this case, the display of the registration tag was unlawful under North Carolina law, as the tag was not properly illuminated under § 20-129(d) of the North Carolina Code. Accordingly, the fact that the tag was displayed in the rear window in a manner in which it was unreadable provided the officer with probable cause to stop Lucas' vehicle. Hence, the district court properly denied Lucas' motion to suppress.

<u>Lucas</u>, <u>supra</u>.

Petitioner's judgment was affirmed, and the Supreme Court denied his petition for a writ of certiorari. <u>Lucas v. United States</u>, 558 US. 868 (2009).

This collateral proceeding under 28 U.S.C. § 2255 followed the Supreme Court's

denial. In his motion, Petitioner raises several claims of ineffective assistance of counsel. The Government has filed a response to Petitioner's § 2255 motion along with an affidavit from Petitioner's trial counsel and a motion for summary judgment. Petitioner filed a reply to the Government's response. The contentions of the parties will be addressed herein.

## II.      STANDARD OF REVIEW

A.      Section 2255 Proceedings

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner is entitled to any relief.

The Court has considered the record in this matter and applicable authority and concludes that this matter can be resolved without an evidentiary hearing. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

B.      Summary Judgment

Summary judgment is appropriate in cases where there is no genuine dispute as to a material fact and it appears that the moving party is entitled to judgment as a matter of law. United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991) (applying summary judgment to motion to vacate). Any permissible inferences which are drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. Matsushita Elc. Indus. Co. Ltd. V. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

# III. DISCUSSION

A.     <u>Ineffective Assistance of Counsel</u>

In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense." <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984). In measuring counsel's performance, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689. A petitioner seeking post-conviction relief bears a "heavy burden" to overcome this presumption. <u>Carpenter v. United States</u>, 720 F.2d 546, 548 (8th Cir. 1983). Conclusory allegations do not overcome the presumption of competency. <u>Id.</u>

To demonstrate prejudice in the context of a guilty plea, Petitioner must still satisfy the standard set forth in <u>Strickland</u>. In regard to the second prong, Petitioner must demonstrate that she was prejudiced by ineffective assistance of counsel by showing "a reasonable probability that, but for counsel's errors, [she] would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985).

Under these circumstances, Petitioner "bears the burden of proving <u>Strickland</u> prejudice." <u>Fields v. Attorney Gen. of Md.</u>, 956 F.2d 1290, 1297 (4th Cir. 1992) (citing <u>Hutchins v. Garrison</u>, 724 F.2d 1425, 1430-31 (4th Cir. 1983), <u>cert. denied</u>, 464 U.S. 1065 (1984)). If Petitioner fails to meet this burden, "a reviewing court need not consider the performance prong." <u>Fields</u>, 956 F.2d at 1297 (citing <u>Strickland</u>, 466 U.S. at 697). In considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. <u>See</u> <u>Sexton</u>

v. French, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under the second prong of Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id. (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)).

      B.    Petitioner's claims regarding ineffective assistance of counsel

      1.  Speedy Trial Act

Petitioner contends that his trial counsel failed to inform him of his right to a speedy trial, and he failed to move to dismiss the criminal charges for the violation of his statutory right to a speedy trial. In general, the Speedy Trial Act provides that a defendant should be tried within 70 days after the filing of an information or indictment, or from the date of a defendant's initial appearance, whichever is last to occur. See 18 U.S.C. § 3161(c)(1); Henderson v. United States, 476 U.S. 321, 323 (1986). However, the statute provides a number of delays which are excluded for purposes of speedy trial calculations, including "[a]ny period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant . . . if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A).

Petitioner was initially indicted on February 28, 2007, and under the Speedy Trial Act, Petitioner should have been tried on or about May 27, 2007. Petitioner's case was placed on the May 7th trial calendar, but on April 30, 2007, Petitioner's trial counsel filed a motion to continue citing his need for additional time to prepare and file a motion to suppress the evidence which was related to Counts 1 and 2 of the indictment. Further, trial counsel noted that the deadline for filing pretrial motions was on May 26 and the Court would need time to hold a hearing on the

motion to suppress. Petitioner's counsel argued that the lack of time to prepare for the suppression hearing would prejudice the Petitioner's ability to challenge the questioned evidence and press his defense to the charges. (3:07-cr-46, Doc. No. 14: Motion to Continue). See 18 U.S.C. § 3161(h)(7)(B)(iv). The Court granted the motion to continue based on the reasons set forth by Petitioner's counsel. See (Doc. Entry, May 7, 2007).

On May 21, 2007, Petitioner's counsel filed the motion to suppress, (Doc. No. 16), and four days later he filed a motion for separate trials regarding the charges in his indictment. Specifically, Petitioner moved for separate trials on Counts 1 and 2 of the indictment. (Doc. No. 17). On July 23, 2007, the Government moved to continue Petitioner's trial citing its intention to file a superseding indictment the following day. (Doc. No. 19). Based on the Government's filing, Petitioner's counsel also filed a motion to continue and noted that with the filing of the superseding indictment, Petitioner could not be tried on the charges in the new indictment until at least 30 days from the date Petitioner appeared with counsel on the new charges. See 18 U.S.C. § 3161(c)(2). Petitioner's counsel observed that the new charges—drug trafficking with possession of a firearm and additional gun charges—would greatly increase Petitioner's potential sentence if he was convicted. The Court allowed both motions to continue, specifically finding that the "ends of justice support this continuance", and continued the trial to the September 2007 term of court. (Doc. No. 21).

On July 25, 2007, the Government filed the superseding indictment which was discussed above. Indeed, the additional charges exposed Petitioner to a very lengthy sentence and created a more complex case. On July 27, 2007, Petitioner's counsel, in an effort to address the new charges, filed a supplemental motion to suppress.

On August 30, 2007, the Court granted Petitioner's motion to continue the suppression hearing. In his motion, Petitioner's counsel discussed his difficulties in having a witness served who could possibly testify favorably for Petitioner regarding the circumstances of the search, detention and arrest of Petitioner following the search of his wife's apartment. The Court also granted a continuance of the trial to the October 2007 trial term, specifically finding that the ends of justice would be served with the postponement. (Doc. No. 28: Order).

The suppression motion came on for hearing on October 2, 2007, just prior to the scheduled selection of the jury for Petitioner's trial. As discussed, the motion to suppress was denied, Petitioner entered into a plea agreement, and he pled guilty to Count 3 and the remaining 5 counts in the superseding indictment were dismissed.

Petitioner offers no argument as to how he was prejudiced by any perceived delays in proceeding to trial on the charges in his original indictment. In fact, the first continuance was in Petitioner's best interest because of the time needed to prepare the suppression motion and to prepare for the hearing. It is merely conclusory and a misperception of the record for Petitioner to offer a blanket presumption that he was prejudiced because a successful suppression motion could have resulted in the dismissal of the charges in his original indictment. See Carpenter, supra, at 548 (unsupported, conclusory allegations do not overcome the presumption of competency). Here, it is clear that the actions of Petitioner's counsel resulted in a vigorous challenge to the legality of the evidence seized during the searches. As Petitioner has failed to demonstrate right to relief under either prong of Strickland, his argument regarding delay will be denied.

The second continuance was necessitated by the impending superseding indictment because of the 30-day window that must be observed following Petitioner's first appearance with counsel. Again, Petitioner provides no argument as to how he was prejudiced, and this argument will be denied.

Last, Petitioner cannot show how he was prejudiced by his counsel's motion to continue the suppression hearing in August 2007, or that the decision to move for a continuance represents deficient performance. As noted, the continuance of the suppression hearing, and the subsequent continuance of the trial date was due, in part, to his attorney's difficulty in locating and serving a material witness to the apartment search. This argument will be denied.

2.     Counsel's failure to inform him of the risks of going to trial versus pleading guilty

Petitioner argues that his counsel failed to share any of the discovery or the alleged evidence that the Government planned to present against him at trial. This argument fails for the simple reason that the evidence his counsel allegedly failed to share, which his Petitioner's counsel would have received in discovery, would have largely consisted of the physical evidence which was obtained by the officers during the detentions, searches, and arrests in the October 2005 and June 2006 incidents described above. Thus, Petitioner could not have been prejudiced if his counsel did not show him the very evidence that he himself had in his possession at the time of the arrests, because Petitioner knew well the very identity of the evidence which consisted of multiple firearms, drug paraphernalia, and a quantity of cocaine and marijuana. Petitioner has failed to demonstrate <u>Strickland</u> prejudice and this argument is denied.

Petitioner also argues that his counsel entered into a written agreement with the Government which provided he would not show any of the discovery materials to Petitioner.

This argument is without merit. In his affidavit, Petitioner's counsel acknowledges that he signed a discovery agreement with the Government, a standard practice in this district. (3:10-cv-492, Doc. No.8-1: Foster Aff. at 4). Petitioner's claim here, that his counsel agreed not to show him any of the Government's discovery, is belied by the sworn statements during his Rule 11 colloquy. During this hearing, Petitioner was placed under oath and asked if he had reviewed the superseding indictment with his attorney and if his attorney had answered all of Petitioner's questions about the charges in the indictment. The charges each specify that Petitioner possessed weapons, after being convicted of three violent felonies or serious drug offenses, or possessed a weapon during and in furtherance of a drug trafficking offense. Under oath, Petitioner clearly stated that he had reviewed the charges and that all of his questions regarding the indictment had been answered. This sworn answer, under any reasonable interpretation, means that Petitioner understood the charges and the evidence that would be presented to prove the charges. (3:07-cr-46, Doc. No. 48: Rule 11 Tr. at 224-225).

In sum, it is inconceivable that Petitioner could say under oath that he understood the nature of the charges, which would necessarily involve an understanding of the evidence that would be presented to support such charges, and now claim under oath that he never observed any discovery materials prior to his decision to plead guilty. The Court finds Petitioner's argument that he was not presented with any discovery is simply baseless and it will be denied.

3. Counsel failed to explain the charges under 18 U.S.C. § 924(c)

Here, again, Petitioner's statement is fatally contradicted by his sworn statement during his Rule 11 hearing when he admitted that he had reviewed the superseding indictment with his attorney and that all of his questions about the indictment had been answered. Petitioner averred

that he understood all of the charges in the superseding indictment which included two counts under § 924(c) of carrying a firearm during and in relation to a drug trafficking crime and in furtherance of the said drug crime. (3:07-cr-46, Doc. 22: Superseding Indictment at 2 (Count 2) and 3 (Count 5)).

"[C]ourts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 colloquy." Lemaster v. United States, 403 F.3d 216 (4th Cir. 2005) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)). "Thus, in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Lemaster, 403 F.3d at 221-22 (citation omitted). For the reasons stated, this argument will be denied.

4.      Suppression hearing

Next, Petitioner offers a host of arguments regarding his counsel's performance during the suppression hearing. (3:10-cv-492, Doc. No. 1 at 6: Ground Two). In large part, Petitioner is seeking to relitigate the suppression hearing in his desire for a different outcome in this collateral proceeding. The myriad of contentions he offers here concern his thoughts about the nature and strength of the evidence offered through Officers Arnold and Strong, who were the two officers on the scene of the October 2005 traffic stop. Petitioner argues that his counsel refused to challenge the officers' "version of the events." During the suppression hearing, both officers testified and were subject to extensive cross-examination by Petitioner's counsel thus

Petitioner's contention that there was no challenge to their testimony regarding the stop, search and arrest is simply incorrect.

Petitioner also contends that his counsel refused to call the other occupants of the vehicle and refused to allow Petitioner to testify regarding the events surrounding the vehicle stop. These claims are without merit as they are clearly undermined by the overwhelming strength of the evidence presented during the suppression hearing. The Court was the finder of fact during the suppression hearing and had the opportunity to observe the demeanor and credibility of the witnesses. The officers' testimony easily supported a finding of reasonable suspicion and probable cause that justified the stop of the vehicle, and the arrest of Petitioner (1) based on his admission that he smoked and possessed a blunt, and (2) based on the baggie which was in plain sight during the stop. Accordingly, the Court finds that Petitioner has failed to carry his burden that his counsel provided deficient performance or that he was prejudiced because of his counsel's performance. This ground for relief will be denied its entirety.[4]

> 5.    Failure to challenge the legality of the search during the traffic stop

The Court examines Petitioner's third and final claim for relief at once because they each deal directly with the traffic stop. In many ways, this is another foray into the sufficiency of the evidence presented at the hearing and the conclusion that sufficient cause existed for the stop. That argument has been rejected by this Court and moreover, the Fourth Circuit expressly affirmed this Court's finding that the motion to suppress the search should be denied. See

---

[4] The Court finds that Petitioner's argument that his counsel was deficient because he did not challenge the constitutionality of the North Carolina statute regarding the placement of tags is conclusory and without merit. (3:10-cv-492, Doc. No. 1 at 5). There is no possibility that this Court would have granted any such challenge to the statute. Petitioner's argument that his counsel was ineffective for failing to raise a challenge to the stop based on racial profiling is denied. The testimony from Officer Strong supported a finding that a violation of North Carolina law had occurred, and there was no indicia that racial profiling precipitated his interest in the vehicle.

<u>Boeckenhaupt v. United States</u>, 537 F.2d 1182, 1183 (4th Cir. 1976) (In a Section 2255 proceeding, a petitioner "will not be allowed to recast, under the guise of a collateral attack, questions fully considered" and decided on direct appeal); <u>United States v. Bell</u>, 5 F.3d 64, 66 (4th Cir. 1993) (holding that the law of the case doctrine "forecloses relitigation of issues expressly or impliedly decided by the appellate court."). Hence, any efforts to establish ineffective assistance of counsel based on his attorney's argument or treatment of the law must be denied as the Fourth Circuit already conclusively decided the issue of what law supported the officer's decision to affect the stop.

Last, Petitioner argues that he should be entitled to prevail in his continued challenge to the legality of the search of his vehicle after the lawful traffic stop. Petitioner cites <u>Arizona v. Gant</u>, 556 U.S. 332 (2009) in support of his contention that the warrantless search, to which Petitioner contends he did not consent, violated his rights under the Fourth Amendment. This argument must fail. Petitioner's statement to Officer Arnold that he had just rolled and smoked a blunt and the fact that the officer observed a plastic baggie in plain view are each events that support the officers' decision to search the vehicle. This argument will be denied.

## IV.    CONCLUSION

For the reasons stated herein, the Court finds that the claims in Petitioner's Section 2255 motion are without merit and accordingly, he is entitled to no relief in this collateral proceeding.

**IT IS, THEREFORE, ORDERED** that Respondent's motion for summary judgment is **GRANTED**. (Doc. No. 9).

**IT IS FURTHER ORDERED** that Petitioner's § 2255 Motion is **DENIED** and **DISMISSED**. (Doc. 1).

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issues a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right.  See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong).

Signed: October 10, 2013

Frank D. Whitney
Chief United States District Judge